TELOCATOR NETWORK OF
AMERICA, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee Millicom
Information Services, Inc., Intervenor,

TELOCATOR NETWORK OF
AMERICA, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Millicom Information Services, Inc., Na-
tional Association of Business and
Educational Radio, Inc., Intervenors.

Nos. 83–2314, 83–2315.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 15, 1984.

Decided May 10, 1985.

Kenneth E. Hardman, Washington, D.C., with whom Phyllis E. Hartsock, was on brief, for appellant in No. 83–2314 and petitioner in No. 83–2315.

Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Bruce E. Fein, Gen. Counsel, Roberta L. Cook, Counsel, F.C.C., Barry Grossman and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., were on brief for appellee in No. 83–2314 and respondents in No. 83–2315. Jack D. Smith, Washington, D.C., entered an appearance for appellee in No. 83–2314 and respondents in No. 83–2315.

John B. Metelski, with whom Michael R. Gardner and Anne Asbill Attridge, Washington, D.C., were on brief, for intervenor Millicom Information Services, Inc. in Nos. 83–2314 and 83–2315.

David E. Weisman, Washington, D.C., was on brief, for intervenor National Ass'n of Business and Educational Radio, Inc. in No. 83–2315.

Before EDWARDS and BORK, Circuit Judges and OBERDORFER,* United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge.

This case is another episode in the long-running controversy about the allocation of radio spectrum between common carriers and private land mobile radio services. Telocator Network of America, the national trade association of the radio common carrier industry, seeks review of two orders of the Federal Communications Commission ("FCC"). The first order established the private carrier paging system ("PCPS") as a new license classification to operate within the private land mobile radio services. The second order granted a PCPS license to Millicom Information Services, Inc. ("Millicom"). Millicom and the National Association of Business and Educational Radio, Inc. have intervened to support the FCC. We accept jurisdiction pursuant to 47 U.S.C. § 402 (1982) and 28 U.S.C. § 2342 (1982).

The central legal issue is whether, within the meaning of the Communications Amendments Act of 1982, customers of Millicom's PCPS are "authorized users" of Millicom's land station. If, as the Commission held, Millicom is the sole "authorized user," Telocator's challenge fails. We hold

that the Commission was correct and affirm its orders.

I.

It will be helpful in understanding the legal issue to clarify the commercial and technological context in which Congress and the Commission acted.

FCC policy, since at least 1949, has been to provide spectrum for land mobile radio service to both private and common carriers. *See General Mobile Radio Service*, 13 F.C.C. 1190, *recon. denied*, 13 F.C.C. 1242 (1949). Land mobile radio service includes three forms: (1) mobile telephone service,[1] (2) dispatch calling,[2] and (3) one-way signaling. This case involves the third service, one-way signaling, which is commonly referred to as "pocket paging" or "beeper" service. Pocket paging systems can be licensed to single entities or to multiple users in approved sharing arrangements that can take either a common or private carrier form. The FCC has approved private sharing arrangements, although similar in many respects to common carrier licensing, to promote competition and allow private users to make more efficient use of the spectrum. Unlike in the common carrier service, private radio service frequencies are generally nonexclusive and have no guarantee of protection from interference. *See* 47 C.F.R. § 90.173(b) (1984).

Prior to the introduction of PCPS's, the FCC had established three types of private sharing arrangements. The first, cooperative use arrangements, involves licensing the base station to a sole licensee. The licensee can share the land station with other eligible persons as long as all use of the station comes under the licensee's control. *Private Land Mobile Radio Services*, 89 F.C.C.2d 766, 767 n. 5 (1982), *recon. denied*, 93 F.C.C.2d 1127 (1983); *Medical*

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

**1.** Mobile telephone service involves two-way radio communications between a mobile radio and an ordinary telephone station.

**2.** Dispatch calling service involves two-way radio communications between base and land mobile stations or between a land mobile station and a landline telephone station not connected to the telephone system.

*Society Services, Inc.,* 26 F.C.C.2d 617, 618–19 (1970).

The second form of shared use, multiple licensing arrangements, involves licensing the base station to two or more eligible users. *See* 47 C.F.R. § 90.185 (1984). Unlike cooperative use arrangements, the users in multiple licensing arrangements are each licensees of the base station and individually have access to and control the transmitter. Each licensee is assigned "tone" signals for direct activation, over a telephone line, of the land station transmitter. This allows each licensee control of the transmitter exclusive of other licensees. *Private Land Mobile Radio Services,* 89 F.C.C.2d at 767 n. 5.

Specialized Mobile Radio Systems are the third form of shared use. This system is similar to multiple licensing arrangements except that the equipment owner is the licensee of the base station transmitter, and he provides the paging service on a commercial basis allowing each user access to and control of a station. *National Association of Regulatory Utility Commissioners v. FCC,* 525 F.2d 630 (D.C.Cir.), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976) ("NARUC").

In July 1982, after a rulemaking proceeding, the FCC determined that the public interest would be served through the allocation of 40 channels in the 929–930 megaHertz ("MHz") band for one-way private paging services. *Second Report and Order, General Docket 80–183,* 91 F.C.C.2d 1214 (1982). The Commission set aside 30 of the channels for private noncommercial systems and 10 of the channels for the creation of PCPS's to operate as additional private services. The Commission felt that "this apportionment of channels [would] provide eligibles with the option of obtaining private carrier paging service from PCP licensees, while reserving adequate spectrum for those users who wish to build and implement their own systems." *Id.* at 1223. Later that same year, the FCC

granted Millicom several licenses to operate as a nationwide PCPS on a for-profit basis. Millicom as the sole licensee exercises exclusive control of its base station. Eligible users gain access to the transmitter through the licensee either by an oral telephone communication to a Millicom operator or through a keyboard display terminal entry over the telephone lines directly to Millicom's METASAT-Sender Computer Interface. Brief of Intervenor Millicom at 10–11.[3] Telocator contends that these methods of access and the interconnection between the METASAT and the land stations violate the interconnection restrictions of 47 U.S.C. § 332(c)(1) (1982). *See* Brief of Petitioner at 47.

Prior to the proposed creation of PCPS, common carriers had mounted an extensive campaign against expansion of private land mobile radio services. Eventually each of the share systems was implemented. *See, e.g., NARUC,* 525 F.2d 630 (court approval of Specialized Mobile Radio Systems). Litigation continued, however, over determinations whether various systems qualified under one of the private classifications and over what standard the FCC should apply in making those determinations. Courts applied the test developed in *NARUC,* which required a case-by-case analysis to determine whether a particular system fit within the common law definition of common carriage: indiscriminate offering of service to the public. *NARUC,* 525 F.2d at 641–42, 647.

In an effort to end the controversy, Congress, in late 1982, enacted 47 U.S.C. § 332(c)(1) (1982) to provide a "clear demarcation between private and common carrier land mobile services." H.R.Conf.Rep. No. 765, 97th Cong., 2d Sess. 54, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2237, 2298.

Shortly after the passage of section 332(c)(1), Telocator challenged the FCC's authorization of PCPS under the *NARUC* test as being in violation of the recently passed section 332(c)(1)'s interconnection

---

**3.** The subscriber's entry into the METASAT computer is formatted and routed to the "METALINK" computer. That computer then directs the message to a METAPLEX computer at the control point of the appropriate land station transmitter. The subscriber has no access to or control over this system. Joint Appendix ("J.A.") at 129a.

requirements. J.A. at 100a. The FCC agreed to reconsider the legitimacy of PCPS under the test for private systems laid out by section 332(c)(1). *Memorandum Opinion and Order, General Docket 80–183,* 48 Fed.Reg. 56,228 (1983). After considering the legislative scheme, the Commission held that the PCPS regulations were consistent with section 332(c)(1). *Id.* at 56,229–30. In doing so, the Commission found that "[a] private land station is multiple licensed or shared by authorized users if more than one licensee or user has the capability of controlling the land station." *Id.* at 56,229 n. 9. In other words, PCPS's that do not allow the end-users to control the land station are not subject to the interconnection restrictions of the Act. *Id.* The Commission continues to require compliance with the interconnection restrictions in those systems which allow non-licensees to control the land stations. *See* 47 C.F.R. § 90.179 (1984).

During this same period, Telocator also challenged, as violative of the interconnection restrictions, the grant of Millicom's application to operate a nationwide PCPS. J.A. at 135a. The Commission's Private Radio Bureau, on March 14, 1983, denied Telocator's challenge stating three bases for its ruling:

■ The Millicom system is not shared at all. There is only one authorized user: Millicom. Only Millicom employees have the ability to access and to control the land station transmitter....

■ ... The legislation makes no reference to interfaces between the public switched telephone network and facilities other than shared private land stations.... [T]he only interface ... is the use of the telephone network to allow the subscribers to convey their messages to Millicom personnel orally or by computer. In both situations, once this occurs there is a complete break of the tele-

phone link. In neither case is there any ability for subscribers to "key" the Millicom transmitter or to transmit their messages via the telephone system and the private land mobile transmitter....

■ The telephone link ... is only used by subscribers to provide communications to Millicom that relate to the business activity in which Millicom is engaged. This use of the telephone is no different than any other use of the telephone in connection with a business activity....

... The links are not held out to others for use in sending their own messages. *Id.* at 122a–23a.

Telocator filed an Application for Review by the full Commission on April 12, 1983. J.A. at 202a. The Commission, in a decision released on November 23, 1983, denied Telocator's application for review, adopted the Private Radio Bureau's rationale,[4] and stated that Millicom's land stations are not "shared by authorized users" within the meaning of section 332(c)(1) because "the only authorized user of its land station is Millicom.... As Millicom is the only licensee and the only authorized user of the land stations, the stations are not shared and the statutory restrictions on interconnection are not applicable." J.A. at 130a–32a. Telocator seeks review of the Commission's findings.

## II.

■ Telocator's challenges to the Commission rule establishing PCPS and to the grant of a license to Millicom turn upon the interpretation of section 332(c)(1) of the Communications Amendments Act of 1982. The question, as already noted, is whether Millicom's customers are "authorized users" of Millicom's land station so that the interconnection restrictions apply. In pertinent part, section 332(c)(1) provides:

---

**4.** Telocator, in its petition for review before the Commission, argued that the Private Radio Bureau improperly found that there is human intervention in the Millicom system even when the subscribers access the system through use of a computer terminal. J.A. at 212a. The Commission, however, stated that the Bureau's decision was not based on a finding of human

intervention. Millicom is the only authorized user of its land stations, regardless of "whether Millicom employees manually intervene in formating and routing the messages ... or whether computers acting under the control and supervision of Millicom perform these functions." *Id.* at 130a.

private land mobile service shall include service provided by specialized mobile radio, multiple licensed radio dispatch systems, and all other radio dispatch systems, regardless of whether such service is provided indiscriminately to eligible users on a commercial basis, except that a *land station licensed* in such service *to multiple licensees or otherwise shared by authorized users* (other than a nonprofit, cooperative station) shall not be interconnected with a telephone exchange or interexchange service or facility . . . .

47 U.S.C. § 332(c)(1) (1982) (emphasis added). Telocator contends that section 332(c)(1) applies to all private shared systems, that PCPS's are such systems, and that Millicom is, therefore, subject to the interconnection restriction.

We think this reading of the statute is too broad. By its terms section 332(c)(1) does not apply the interconnection restriction to all private land radio services but rather to those with land stations that are licensed to "multiple licensees" or are "otherwise shared by authorized users." The phrase "otherwise shared by authorized users" refers back to "land station" and not to the service as a whole. The interconnection restriction applies only to shared systems where the land station is controlled directly by the authorized users and not to every shared system merely because the end-users have access to the system through the licensee. Only the sole licensee—in this case Millicom—has control of the land station in a PCPS. To find that each end-user in a PCPS has control of the land station, we would have to make the unwarranted finding that the entire PCPS network constitutes the "land station" for purposes of a section 332(c)(1) determination.

Telocator argues that the Commission's interpretation is inconsistent because "cooperative station" is included as subject to the interconnection restrictions, and cooperative stations are shared systems where the eligible participants share the licensee's system but not the land station. Brief of Petitioner at 38. This analysis is faulty.

Cooperative stations are referred to in the statute parenthetically as being excluded from the subset of systems subject to the interconnection restrictions—"*other* than a nonprofit, cooperative station." 47 U.S.C. § 332(c)(1) (1982) (emphasis added). This fact strengthens the Commission's position because, as Telocator points out,

"In none of the [cooperative use] arrangements was any person other than the licensee authorized to 'control' the shared base station transmitter; i.e., the participant-users were not permitted to have control stations or control points of their own. . . . This difficulty was corrected through multiple licensing."

Brief of Petitioner at 38–39, *citing Tentative Decision, Docket No. 18921,* 46 Fed. Reg. 32,039, 32,041 (1981). Thus, the distinguishing characteristic of cooperative arrangements, and the basis on which the Commission categorized PCPS's, is that the land station cannot be controlled by the subscribers.

■ It is conceded that "multiple licensees" are persons who are licensed to operate the station or to control its operation. It is natural, though perhaps not inevitable, to suppose that the "authorized users," who are placed by the clause in parity with licensees, are also persons who by agreement are authorized to operate or control the station. If the broader meaning advanced by Telocator had been intended, presumably Congress would not have bothered to describe both multiple licensees and authorized users but would simply have applied the interconnection restriction to all private systems as defined in 47 U.S.C. § 153(gg) (1982), the broad, all encompassing, definitions section of the Communications Amendments Act of 1982 passed in conjunction with section 332(c)(1). If the more restricted version of the language which we have found natural is not the necessary interpretation, it is surely an allowable one, and the Commission is entitled to adopt it. *See FCC v. WNCN Listeners Guild,* 450 U.S. 582, 587, 101 S.Ct. 1266, 1270, 67 L.Ed.2d 521 (1981); *Columbia Broadcasting System v. Democratic National Committee,* 412 U.S. 94, 121–22, 93 S.Ct. 2080, 2095–96, 36 L.Ed.2d 772 (1973).

Although the legislative history is scanty, the Commission's interpretation is consistent with the intent of Congress and the statute's basic purpose. In enacting section 332(c)(1), Congress directed the Commission to deregulate the market and "add, modify, or delete private land mobile services as the need arises, consistent with the guidelines specified in subsection 33[2](a)." H.R.Conf.Rep. No. 765, *supra,* at 52, 54, 1982 U.S.Code Cong. & Ad.News at 2296, 2298.[5] Section 332(c)(1) was thus not intended to limit the private carrier systems to existing configurations. That section allows the FCC, when faced with future technological and public policy advances, to create new systems that will make more efficient use of the spectrum. The only limitation is that systems with shared land stations are to be subjected to the interconnection restrictions. That is not the case here.

■ Millicom's customers cannot operate or control Millicom's base stations. The customers merely deliver the message to the Millicom intermediary—the employee or METASAT interface. When the land station transmitter becomes available, the intermediary ensures that the message is relayed. *See supra* note 3. Although the message is initially transmitted to Millicom over the telephone lines, at no time does Millicom relinquish to subscribers control of or grant direct access to its land stations. *See supra* p. 7–8. Thus, under the reading we and the Commission give the statute, Millicom's land stations are not "shared by authorized users" and the system, therefore, is not subject to the interconnection restrictions of section 332(c)(1). We affirm the Commission's grant of a PCPS license to Millicom.[6]

5. Section 332(a) specifically instructs the Commission to manage the private land mobile services spectrum subject to four considerations: [that] such actions will—
   (1) promote the safety of life and property;
   (2) improve the efficiency of spectrum use and reduce the regulatory burden upon spectrum users, based upon sound engineering principles, user operational requirements, and marketplace demands;
   (3) encourage competition and provide services to the largest feasible number of users; or
   (4) increase interservice sharing opportunities between private land mobile services and other services.
   47 U.S.C. § 332(a) (1982).

6. Telocator alleges that because the Private Radio Bureau had before it an issue of first impression, it was required under Commission rule, 47 C.F.R. § 331(a)(5) (1984), to refer the question to the Commission *en banc.* Brief of Petitioner at 32, 48–50. We disagree. The Bureau was fully aware of the long history of dispute between common and private carriers. They thoroughly considered all the issues and gave a fully reasoned decision. The Commission affirmed their judgment. J.A. at 130a–133a. It is not clear what petitioner hopes to gain by raising this issue. The Commission has made its position clear, *see id.,* and therefore a remand would be of little avail. We therefore find no abuse of discretion in the Private Radio Bureau's decision not to refer the case to the full Commission.